**APPELLATE CASE NO. 15 C 3118**

**APPEAL TO THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **DVORKIN HOLDINGS, LLC,** ) | |
| ) | **No. 15 C 3118** |
| **Debtor,** ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| ) | |
| ) | **On appeal from U.S. Bankruptcy Court** |
| ) | **for the Northern District of Illinois,** |
| ) | **Eastern District** |
| **COLFIN BULLS FUNDING A, LLC** ) | |
| ) | |
| **Appellant** ) | **Bankr. Case No. 12-31336 (JPC)** |
| ) | |
| **v.** ) | |
| ) | |
| **GUS A. PALOIAN, Trustee** ) | |
| ) | |
| **Appellee.** ) | |

**MEMORANDUM OPINION AND ORDER**

This appeal arises from an adversary proceeding in the bankruptcy of Dvorkin Holdings,

LLC (hereinafter "Dvorkin" or "Debtor"), a real estate development firm based in Palos Heights,

Illinois. Dvorkin declared bankruptcy shortly after its founder, Daniel Dvorkin, was charged with

hiring a hit man to kill a creditor who had won an $8.2 million judgment against him. *See United*

*States v. Dvorkin*, 799 F.3d 867 (7th Cir. 2015). Appellant ColFin Bulls Funding A, LLC

(hereinafter, "ColFin" or "Lender"), a secured creditor, filed a proof of claim with the bankruptcy

court in November 2012. ColFin's proof of claim included, among other things, the so-called

"Lombard Claim": approximately $1 million owed to ColFin by Dvorkin, secured by a mortgage

against a parcel located in Lombard, Illinois. Shortly after filing the claim, ColFin reached an

agreement with the estate's trustee, Gus A. Paloian: the Trustee would sell the Lombard

property, and ColFin would release its mortgage in return for the net proceeds of the sale, so long

as the property sold for a minimum amount to be identified in another agreement. But the

settlement agreement had a shelf-life. If no sale occurred by April 12, 2015, the parties agreed that the agreement would automatically terminate and the parties would be "restored to their respective rights, remedies and obligations existing immediately before" signing the agreement.

The Trustee and ColFin also entered into a second contract—the broker selection agreement—which provided for the hiring of a real-estate broker and set the minimum sale price for the Lombard parcel at $1.7 million. But this agreement had an even earlier expiration date: December 31, 2014. New Year's Eve came and went without a sale, and the parties never established another minimum sale price. As the April 12, 2015 deadline approached without an interested buyer, the Trustee sought the approval of the bankruptcy court to use estate funds to enable the Debtor itself to purchase the Lombard parcel for $1.7 million. ColFin objected, arguing that the sale violated the settlement agreement and the broker selection agreement because the parties no longer had an agreement on price after December 31, 2014. Trustee countered that the bankruptcy court need not reach ColFin's objections in order to authorize Debtor's purchase. The court approved the Trustee's proposed use of estate funds over ColFin's objection, giving rise to this appeal. For the reasons that follow, this court concludes that the merits of the Trustee's proposal cannot be determined without assessing the impact of the parties' agreement on that transaction. Accordingly, the decision of the bankruptcy court is reversed.

## BACKGROUND

Dvorkin filed for Chapter 11 bankruptcy protection in August 2012. (Bankr. R. 1.) Later that year, ColFin filed a proof of claim against the Estate for just over $3.5 million, consisting of two loans: (1) the "Lynwood Claim," $2,497,668.62 owed to Lender by Lynwood LLC and guaranteed by the Debtor, which is secured by a mortgage against parcels of land in Lynwood, Illinois (App. to Appellant's Br. [24], hereinafter "App.," at 15); and (2) the "Lombard Claim," $1,007,098.63 owed by Debtor to Lender, which is secured by a mortgage against a parcel of land

located at 2200 South Main Street, Lombard, Illinois (*id.* at 14). ColFin's mortgage on the

Lombard property is subordinate to a first-priority mortgage held by DH Mortgage Holder, LLC,

which is wholly owned by Debtor.[1]  (*Id.*)

The bankruptcy court approved a settlement agreement between ColFin, the Trustee, and

several other creditors in July 2014.   (Bankr. R. 497.)   That agreement reads, in relevant part, as

follows:

> [ColFin] consents to the sale of the Lombard Parcel free and clear of the Lombard
> Junior Mortgage; provided, however, the gross sale price of the Lombard Sale
> shall equal such amount as agreed to in writing by the Trustee, [ColFin] and the
> Broker (as defined below)[2], and such sale shall satisfy the other requirements set
> forth in Section 5 of the Settlement Agreement.
>
> . . .
>
> Notwithstanding anything to the contrary in this Agreement, if (a) Chapter 11
> Trustee does not consummate a Final Sale Contract pursuant to Section 5
> above . . . within two-hundred seventy (270) days after the Effective Date (or such
> later date as Chapter 11 Trustee and [ColFin] may agree), this Agreement shall
> automatically terminate and be rendered null and void ab initio in its entirety, and
> the Parties shall have and be restored to their respective rights, remedies and
> obligations existing immediately before the Effective Date.)

(App. at 39, 42.)   The parties agreed that the 270-day deadline expired on April 12, 2015; the

settlement agreement would automatically terminate on that date.   (Appellant's Br. at 4;

Appellee's Br. at 2.)

On July 7, 2014, shortly after executing the settlement agreement, Lender, the Trustee,

and the real estate firm of Marcus & Millichap (the "Broker") entered into a separate contract

---

[1]       Although the relative priority of the parties' mortgages may be important on
remand, the parties have not explained why that distinction is relevant to this court's analysis.

[2]       This language suggests the parties intended to establish a minimum sale price in
the settlement agreement itself, but the settlement agreement does not include a minimum price
term.

referred to as the "broker selection agreement." (App. 51–53.) This document reads, in pertinent part, as follows:

> a.     The Parties agree that Broker shall have an exclusive right to market and sell the Property for the period from the Effective Date through and including December 31, 2014 (the "Term") . . . .
>
> b.     The Parties agree that the minimum sale price for any sale of the Property to a third party during the Term . . . shall be One Million Seven Hundred Thousand Dollars ($1,700,000.00) (the "Minimum Sale Price").

(App. at 51–52.)

Despite its efforts to sell the property, the Broker failed to find a buyer for the Lombard parcel during the Term ending December 31, 2014.   The Broker continued to market the property until at least March 2015, however, when it received an offer for $1.3 million.   (App. at 55–65.) But Lender rejected that sale proposal, asserting that the proposed sale violated the settlement agreement.[3]   (Appellant's Br. at 5.)   On March 10, 2015, with the April 12 deadline looming, the Trustee sent Lender another sale proposal in which the Debtor itself would purchase the Lombard parcel for $1.7 million.   (App. at 90–99.)   Also on that date, the Trustee filed a related motion to use the estate's funds outside of the ordinary course of business, pursuant to Section 363(b) of the Bankruptcy Code.   (App. at 20.)

Lender objected to this sale proposal, as well, on the grounds that it was not authorized by the broker selection agreement and the settlement agreement.   (Letter from ColFin to Trustee of March 17, 2015, App. at 100–04.)   In a letter from its attorney to the Trustee, ColFin explained its objection using the following rationale:

---

[3]     Although the record contains a copy of the proposed sale contract (App. at 55-65; Appellant's Br. at 5), it does not include the communication from ColFin rejecting the sale, and Lender does not explain why it believed the proposed $1.3 million sale violated the parties' agreement.   Based on the arguments marshaled by ColFin here, however, the court infers that its objection rested on the fact that the sale came after the expiration of the broker selection agreement on December 31, 2014 and the parties had not reached a new agreement on a minimum sale price.

> Although the Trustee was previously authorized to sell the Lombard Parcel free and clear of the Lombard Junior Mortgage for as low as the Minimum Sale Price during the Term of the Broker Selection Agreement, the Term expired on December 31, 2014. Upon expiration of the Term, there was (and is) no written agreement in place among the Trustee, Lender and the Broker regarding the gross sale price of the Lombard Parcel as required by Section 5 of the Settlement Agreement. Thus, the Trustee has no authority to sell the Lombard Parcel for any amount without Lender's written agreement. Additionally, Section 2 of the Broker Selection Agreement expressly states that the Minimum Sale Price shall apply only to a sale to a "third party." Clearly the Debtor, as proposed purchaser, is not a third party given that the Trustee executed that agreement on behalf of the Debtor.

(*Id.* at 102.)   ColFin went on to explain that, so far as it was concerned, any sale made in violation of the settlement agreement would not be subject to that agreement's requirement that ColFin release its mortgage.   (*Id.* at 103.)

The bankruptcy court held a two-day hearing on the Trustee's motion in March 2015.   (*Id.* at 114–154.)   At the hearing, the Trustee encouraged the bankruptcy court to consider his motion without reaching Lender's objections.   He argued that the two issues were distinct, and urged the court to authorize his proposed use of estate funds now and defer consideration of whether the sale violated the settlement agreement.   As the Trustee saw things, a ruling on his motion would leave ColFin's mortgage rights undisturbed for the time being:

> We think [Lender's] rights under the settlement agreement would be in place [if the motion were granted].   You're simply allowing us to attempt to consummate the transaction and enforce our rights under the settlement, at which point they can either voluntarily release the lien or not, and, if not, then the proper action to adjudicate the parties' rights under the settlement will be brought to your Honor with the issues teed up for your Honor to rule on.

(*Id.* at 137.)

Under the Trustee's proposed approach, the only issue before the bankruptcy court was whether the use of estate funds to purchase the Lombard property amounted to a "sound business judgment."   On this score, the Trustee offered the following justification:   "It's clear that the motion before the Court meets the business judgment test because there's substantially more benefit to the estate from going forward with this transaction than not."   (*Id.* at 146.)

5

Stephen Wolfe, counsel for the Office of the United States Trustee, also weighed in at the hearing. He agreed with Paloian that the proposed sale would benefit the estate without harming ColFin's interests. But Wolfe's understanding of the sale apparently relied on a misunderstanding of the Trustee's position. Wolfe told the bankruptcy court that

> [b]ased on the claims reduction and the fact that the trustee will be getting some real estate free and clear in exchange for a payment, there does appear to be a significant benefit to the estate. . . . I think Mr. Paloian has indicated all of ColFin's rights are being preserved, so we support the trustee on this one.

(*Id.* at 148.) In other words, while the Trustee asked the bankruptcy court to authorize the sale without delving into the issue of ColFin's mortgage rights, Wolfe believed that the motion before the court would authorize the sale "free and clear" of ColFin's mortgage but nevertheless somehow preserve ColFin's rights. This contradiction was not discussed further at the hearing.

In the end, the bankruptcy court approved the Trustee's use of estate funds to buy the Lombard parcel over Lender's objection, finding that the purchase "is consistent with the business judgment rule, and that the agreement and controlling documents do not indicate that the trustee is a prohibited third party."[4] (*Id.* at 148.) The bankruptcy court entered its Approval Order on March 25, 2015 without prejudice to the parties' rights under the settlement agreement. (*Id.* at 112.) The bankruptcy court's order granted the Trustee permission to use the estate's funds to purchase the Lombard property. Consistent with the Trustee's position, it did not, however, address the issue of any party's rights under the settlement agreement. (*See* Tr. of Bankr. Ct. Proceedings of March 25, 2015, App. 149–151.) That is, the bankruptcy court did not reach the issue of whether the estate's purchase of the Lombard parcel required ColFin to release its mortgage. Lender filed this timely appeal. (R. 1).

---

[4] Lender points out that the bankruptcy court apparently misspoke in issuing its oral ruling on the Trustee's approval motion. (Appellant's Br. at 17.) Given that (1) the broker selection agreement authorizes sales to "third parties" and (2) the court granted the Trustee's motion, it must have meant that the agreement did not prohibit a sale to the Debtor.

The matter also remains pending in the bankruptcy court: The Trustee has consummated the purchase of the Lombard parcel (Appellee's Br. at 8), and Lender has filed an adversary complaint seeking declaratory relief in bankruptcy court (No. 15-00264). In that suit, ColFin alleges that the Trustee breached the parties' settlement agreement and asks the court to declare that agreement "terminated" and "rendered null and void *ab initio*." (Complaint, R. 1, No. 15-00264 (Bankr. N.D. Ill. April 20, 2015).) This appears to be the ruling the Lender seeks in this court, as well. Still, for reasons this court does not fully understand, Lender moved to stay this appeal pending the outcome of that adversary proceeding, arguing that a stay would prevent "duplicative, piecemeal litigation" and "avoid the risk of inconsistent results." (R. 12.) This court denied that motion (R. 20), and the adversary proceeding is still pending before the bankruptcy court as of March 14, 2016.

## DISCUSSION

### I. Standard of Review

Pursuant to 11 U.S.C. § 363(b)(1), a trustee "may use, sell, or lease" property of the estate outside of the "ordinary course of business" so long as the trustee can demonstrate a sound business justification for the transaction. *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (quoting *In re Continental Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)). The Seventh Circuit has clarified that a trustee's justification warrants judicial approval if it "makes good business sense" (i.e., if "the creditors as a whole . . . benefit"). *Retired Pilots Ben. Prot. Ass'n v. United Airlines, Inc.*, 443 F.3d 565, 571–72 (7th Cir. 2006) (citing *In re Schipper*, 933 F.2d at 515).

The court reviews a bankruptcy court's findings of fact for clear error and its legal conclusions de novo. *See In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). The interpretation of a contract is a question of law. *Florida East Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125, 1128 (7th Cir. 1994). A bankruptcy court's order authorizing the sale

of assets under 11 U.S.C § 363(b) is reviewed under an abuse-of-discretion standard. *Stephens*

*Industries, Inc. v. McClung*, 789 F.2d 386, 388–89 (6th Cir.1986); *Darby v. Zimmerman (In re*

*Popp)*, 323 B.R. 260, 265 (B.A.P. 9th Cir. 2005). A court abuses its discretion when "its decision

is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the

record contains no evidence on which the court rationally could have relied." *Corp. Assets, Inc.*

*v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004).

**II.    The Bankruptcy Court Abused Its Discretion by Approving the Use of Estate Funds Without Considering Whether the Sale of the Lombard Parcel Violated the Parties' Agreements**

The Trustee has put forward the following business justification for the sale of the

Lombard parcel to Debtor:

> (a) the use of Estate funds to purchase the Lombard Parcel was necessary to effectuate the Settlement Agreement; (b) the Settlement Agreement would automatically terminate on April 12, 2015, if a sale of the Lombard Parcel was not consummated prior to that date; (c) purchasing the Lombard Parcel would result in the reduction of Lender's claim against the Estate under the terms of the Settlement Agreement; (d) purchasing the Lombard Parcel would result in the acquisition by the Estate of the Lombard Parcel (worth $1.3 million), free and clear of Lender's mortgage; and (e) the benefits of the reduction of Lender's claim and the acquisition of the Lombard Parcel far outweighed the net cost to the Estate of purchasing the Lombard Parcel.

(Appellee's Br. at 12–13 (citations omitted).)

Lender argues, however, that in approving the sale of the Lombard parcel, the bankruptcy

court erred twice over. First, it "failed to consider whether the proposed sale . . . violates the

Settlement Agreement and Broker Selection Agreement." (Appellant's Br. at 11–13.) Second,

had the court properly considered the implications of these documents, Lender argues, the court

"necessarily would have found that the proposed sale violates the Settlement Agreement and

Broker Selection Agreement and thus, the Trustee's business judgment was unreasonable." (*Id.*

at 13.) This court need not look beyond the first of these arguments, however, as it is dispositive.

The bankruptcy court's brief oral decision in this case offers relatively little guidance in understanding its reasons for granting the Trustee's motion. This court therefore looks to the arguments offered by the Trustee in favor of the motion, which can be boiled down to the idea that the Debtor's purchase of the land free and clear of ColFin's mortgage will save the Estate money. That line of argument, if true, is enough to warrant the use of Estate funds. *See Retired Pilots Ben. Prot. Ass'n*, 443 F.3d at 571–72 (citing *In re Schipper*, 933 F.2d at 515).

But what if the purchase is *not* free and clear of the mortgage? The bankruptcy court did not consider this question, and chose instead to bifurcate its analysis of the Trustee's motion under § 363(b) from the question of whether the purchase violated the parties' settlement agreement. But these issues are too intertwined to consider separately in this case, because the "business sense" of the Trustee's proposed use of Estate funds depends entirely on whether the parties' settlement agreement remains enforceable, requiring Lender to release its mortgage on the Lombard parcel. As the Trustee himself recognized, the Debtor's purchase of the Lombard parcel benefits the estate if the Lender releases its mortgage on the property, but the purchase actually hurts the estate if the Lender's mortgage remains. (Appellee's Br. at 9 ("[I]f the Trustee can enforce its contractual rights under the Settlement Agreement against Lender, the Estate will benefit by over $2 million; if Lender successfully evades its obligations under the Settlement Agreement, Lender will gain $2 million, at the expense of the Estate.")) In other words, the Debtor's purchase of the Lombard parcel is a sound and reasonable business judgment only if that sale did not violate the parties' settlement agreement.

The Debtor's purchase of the Lombard parcel appears, on its face, to be inconsistent with the terms of the parties' agreements, but that issue is not before the court. Rather, that issue is better left for the bankruptcy court to consider in the first instance on remand. But without

resolving that question, the bankruptcy court cannot reasonably determine whether the Trustee's use of Estate funds for that purpose satisfy the business judgment test.

## CONCLUSION

For the reasons stated above, the bankruptcy court's order approving the Trustee's § 363(b) motion is vacated and the case is remanded for further proceedings consistent with this opinion.

ENTER:

Date: March 14, 2016

_____
REBECCA R. PALLMEYER
United States District Court